UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IRA LA'RAY LANE,

      Petitioner,

v.                                 Case No. 6:11-cv-1475-Orl-37DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1).   Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.   Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions (Doc. No. 14).   Petitioner filed a reply to the response (Doc. No. 23).

Petitioner alleges twenty-one claims for relief in his habeas petition.   For the following reasons, the petition is denied.

## I.   *Procedural History*

Petitioner was charged by indictment with first degree murder (count one), kidnapping (count two), and robbery (count three).   A trial was conducted, and the jury found Petitioner guilty of the lesser included offense of second degree murder and guilty as charged of kidnapping and robbery.   The trial court subsequently reduced

the conviction for kidnapping to false imprisonment.   The trial court sentenced Petitioner to a thirty-year term of imprisonment for the second degree murder, to a five-year term of imprisonment for false imprisonment, and to a fifteen-year term of imprisonment for robbery and ordered the sentences to run concurrently.   Petitioner appealed.   The Fifth District Court of Appeal of Florida affirmed the convictions.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and multiple supplemental motions.   The state court dismissed the motions without prejudice and allowed Petitioner to file a motion that did not exceed fifty pages.   Petitioner subsequently filed an amended Rule 3.850 motion, which the trial court denied.   Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a state habeas petition, alleging ineffective assistance of appellate counsel.   The Fifth District Court of Appeal of Florida summarily denied the petition. Petitioner filed a second state habeas petition, which was dismissed by the Fifth District Court of Appeal.

## II.   *Legal Standards*

### A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

   (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."   *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."   *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in

3

light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    Standard for Ineffective Assistance of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.   Analysis

### A.   Claims One, Three, and Four

In claim three, Petitioner contends that that trial court violated his constitutional rights by constructively amending the indictment by instructing the jury that Petitioner could be convicted pursuant to the principal theory.   In claim four, Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the principal jury instruction.   Petitioner further maintains in claim one that appellate counsel rendered ineffective assistance by failing to assert that the trial court committed plain error by constructively amending the indictment by instructing the jury on the principal theory. Respondents argue that claim three was not raised in the state court, and thus is procedurally barred from review, and that claims one and four are subject to denial pursuant to section 2254(d).

5

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.   28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)  (I)  there is an absence of available State corrective process; or
>
>  (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.   *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last

6

state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

In the instant case, the record establishes that Petitioner raised claim three in his Rule 3.850. The state court denied the claim as procedurally barred because it should have been raised on direct appeal. (App. L at 2.) Thus, claim three is procedurally barred from review by this Court absent an exception to the procedural default bar.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner has not shown the applicability of the actual innocence exception. Likewise, Petitioner has not shown cause or prejudice that would excuse any procedural default. To the extent Petitioner may be seeking to excuse the default based on trial or appellate counsel's failure to raise the matter of the principal instruction, Petitioner has not established either cause or prejudice based on counsels' performance.

Petitioner raised claim one in his state habeas petition, and the Fifth District Court of Appeal summarily denied the petition. Petitioner raised claim four in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. L at 16.) The state court reasoned that the principal instruction was properly given because it was supported by the evidence. *Id*. at 2. Thus, counsel had no basis to object to the principal instruction. *Id*. at 2, 16.

The Supreme Court of Florida has held that "a person who is charged in an indictment or information with commission of a crime may be convicted on proof that

[he] aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So. 2d 195, 215 (Fla. 2008) (citing *State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971)).   Thus, under Florida law, "if an information charges a defendant with a substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." *Watkins v. State*, 826 So. 2d 471, 474 (Fla. 1st DCA 2002) (citing *Roby*, 246 So. 2d at 571, and *Jacobs v. State*, 184 So. 2d 711, 715 (Fla. 1st DCA 1966)).   Therefore, pursuant to Florida law, if evidence exists to support the principal theory, the trial court may instruct the jury on the principal theory.

Initially, the Court notes that defense counsel argued that the principal instruction did not apply and objected to it.   (App. A-2 at 226-27, 283.)   Thus, counsel sought to have the principal instruction excluded.

Notwithstanding counsel's objection, the evidence presented at trial established that Petitioner and Lucinda Freeman planned to rob the victim, Thearn Grant ("Grant"), of his ATM card, and during the incident, Petitioner beat Grant, which caused head injuries and subsequently resulted in Grant's death.   The trial court determined that the evidence was sufficient to support the principal instruction.   (App. A-2 at 226.) Consequently, pursuant to Florida law, the principal instruction was properly given, and counsel was not deficient for failing to raise the issue of the purported constructive amendment of the indictment nor was Petitioner prejudiced as a result.   Accordingly, claim three is procedurally barred and claims one and four are denied pursuant to

section 2254(d).

### B.    *Claim Two*

Petitioner contends that the trial court violated his constitutional rights by denying his motion for judgment of acquittal on the robbery charge.   Petitioner raised this claim on direct appeal, and the Fifth District Court of Appeal affirmed *per curiam*.

The standard of review in a federal habeas corpus proceeding when the claim is one of sufficiency of the evidence was articulated in *Jackson v. Virginia,* 443 U.S. 307 (1979).   In *Jackson*, the Court concluded that when considering a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson*, 443 U.S. at 319; *Johnson v. Alabama,* 256 F.3d 1156, 1172 (11th Cir. 2001).   Federal courts may not reweigh the evidence.   *Jackson*, 443 U.S. at 319.   It is the duty of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Id.*

Section 812.13(1), Florida Statutes defines robbery as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear."   Fla. Stat. § 812.13(1) (2005).

At trial, the jury heard Petitioner's statement to police.   Petitioner told police that he took a knife from Grant, beat Grant, restrained him, and later took the knife back to his motel room.   (App. A-2 at 184-95.)   The knife was found in the room where Petitioner was staying.   *Id*. at 78, 111.   The Court concludes that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of robbery beyond a reasonable doubt.   Thus, the state court's denial of Petitioner's motion for judgment of acquittal was not contrary to, or an unreasonable application of, federal law, and claim two is denied.

### C.   Claim Five

Petitioner contends that counsel rendered ineffective assistance by failing to object to the manslaughter jury instruction.   In support of this claim, Petitioner argues that the instruction erroneously provided that manslaughter required proof that he "intentionally caused the death" of Grant.   Petitioner relies on relies on *Montgomery v. State*, 39 So. 3d 252 (Fla. 2010), which held that the standard jury instruction on manslaughter requiring the jury to find that the defendant intended to kill the victim was erroneous and resulted in fundamental error.

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the claim because the standard jury instruction in effect at the time was given, and counsel, therefore, had no basis to object.   (App. L at 16-17.)

Petitioner has not demonstrated that counsel rendered ineffective assistance by failing to object to the standard jury instruction on manslaughter in effect at the time of

11

the trial in 2007.   Florida courts have held that counsel's failure to challenge a standard

jury instruction not disapproved by the Supreme Court of Florida does not constitute

ineffective assistance of counsel.   *See McGill v. State,* Case No. 2013 WL 3014124, *1

(Fla. 4th DCA 2013) (citing *Lukehart v. State*, 70 So. 3d 503, 520–521 (Fla. 2011); *Rodriguez

v. State*, 919 So. 2d 1252, 1272 (Fla. 2005)).   Furthermore, counsel is not required to

anticipate changes in the law.   *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir.

2001); *see also Ross v. State*, 82 So. 3d 975, 976 (Fla. 4th DCA 2011) (holding that

*Montgomery* "does not apply retroactively to convictions which were final before our

supreme court issued that decision.").

    *Montgomery* was issued approximately three years after Petitioner's trial.   As

noted by the Fifth District Court of Appeal of Florida,

> the First District Court of Appeal, in *Montgomery v. State*, 70
> So. 3d 603, 2009 WL 350624 (Fla. 1st DCA 2009), *approved*, 39
> So. 3d 252 (Fla. 2010) held that the standard manslaughter by
> act jury instruction, . . . improperly imposed an additional
> element of intent to kill and was therefore fundamentally
> erroneous.   *No court had previously so held*.   To the contrary,
> this Court, in *Barton v. State*, 507 So. 2d 638 (Fla. 5th DCA
> 1987), *quashed in part on other grounds*, 523 So. 2d 152 (Fla.
> 1988), had approved the standard manslaughter by act jury
> instruction and was the controlling law in this district at the
> time. . . .

*Lopez v. State*, 68 So. 3d 332, 333 (Fla. 5th DCA 2011) (emphasis added).   Thus, at the

time of Petitioner's trial, no court in Florida had held that the manslaughter instruction

was improper nor had the Supreme Court of Florida disapproved the instruction.

Counsel, therefore, was not deficient for failing to object to the manslaughter instruction

nor has Petitioner demonstrated that a reasonable probability exists that the outcome of the trial would have been different had counsel done so.   Accordingly, claim five is denied pursuant to section 2254(d).

D.    Claim Six

Petitioner asserts that the prosecutor knowingly presented false testimony in violation of *Giglio v. United States*, 405 U.S. 150 (1972).   In support of this claim, Petitioner argues that Dr. Sara Irrgang, the medical examiner, testified that Grant's pockets were turned inside out when she examined him at the morgue and crime scene photographs demonstrated that Grant's pockets were not turned out.   Petitioner contends that Grant's pockets were pulled out by medical examiner investigator Tommy Willis ("Willis") before Dr. Irrgang examined the victim.

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the claim.   (App. L at 3-4.)   The state court reasoned that Dr. Irrgang did not testify when Grant's pockets were turned inside out.   *Id.* at 4.   The state court concluded that Dr. Irrgang's testimony was not false nor was the matter material.   *Id.*

A petitioner can establish a due process violation pursuant to *Giglio* by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony,' and (2) there is a reasonable probability that the perjured testimony could have affected the judgment." *United States v. Elso*, 364 F. App'x 595, 599 (11th Cir. 2010) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).   "'To obtain a reversal on the grounds that the government relied on perjured

13

testimony, the following must be shown: (1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false.'"   *Id.* (quoting *United States v. Bailey*, 123 F.3d 1381, 1396 (11th Cir. 1997)).

Petitioner in the instant case has not demonstrated that Dr. Irrgang's testimony was false.   At trial, she testified that Grant's pockets were turned inside out when she examined him.   (App. A-2 at 146.)   She did not testify that the victim's pockets were turned inside out when he was found at the crime scene.   Moreover, testimony that Grant's pockets were turned inside out was not material.   As discussed *supra*, the jury heard Petitioner's statement to police, wherein he admitted taking Grant's knife and beating him.   Thus, even if Grant's pockets were not turned inside out by Petitioner during the incident, sufficient evidence existed to support the robbery conviction. Petitioner, therefore, has not demonstrated that there is a reasonable probability that the allegedly perjured testimony could have affected the judgment.   Accordingly, claim six is denied pursuant to section 2254(d).

### E.    *Claims Seven through Seventeen*

Petitioner asserts in claims seven through twelve that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   To prevail on a claim brought under *Brady v. Maryland*, 373 U.S. 83 (1963), Petitioner must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and

14

(4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989).   As the Supreme Court of the United States has decreed, "evidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different."   *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).   "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."   *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).

In claims thirteen through seventeen, Petitioner contends that counsel rendered ineffective assistance of counsel by failing to object or request a *Richardson*[2] hearing. These claims are premised on the evidence purportedly suppressed by the prosecutor as alleged in claims seven through twelve.   The Court will address each of Petitioner's *Brady* claims and associated ineffective assistance of counsel claims together.

### i. Medical Examiner Investigator Report and Photographs (Claims Seven and Thirteen)

In claim seven, Petitioner contends that the prosecution failed to disclose medical examiner investigator Willis' report and crime scene photographs.   Petitioner argues

---

[2]*Richardson v. State,* 246 So. 2d 771(Fla. 1971) (holding that once a discovery violation is revealed, the trial court must conduct an inquiry to determine the sanctions that should be imposed on the violating party).

that if these items had been disclosed to the defense, Dr. Irrgang "would have been precluded from telling the jury a partial story about Grant's pockets being pulled inside out." (Doc. No. 1 at 22.)   In claim thirteen, Petitioner contends that counsel rendered ineffective assistance by failing to object and request a *Richardson* hearing during Dr. Irrgang's testimony. Petitioner maintains that had counsel objected, he would have been able to present evidence to demonstrate that he did not pull out Grant's pockets.

Petitioner raised these claims in his Rule 3.850 motion.   In denying relief, the state court determined that the crime scene photographs only showed that Grant's right front pocket was slightly out and his left front pocket was covered by his bound wrist, while the photograph taken at the morgue showed both of the front pockets pulled out. (App. L at 5.)   The state court further reasoned that Willis's report did not mention "pulling out the pockets or changing their appearance."   *Id.*   The state court concluded that no reasonable probability existed that the outcome of the trial would have been different if the photographs or the report been disclosed because they were not exculpatory or impeachment material.   *Id*. at 5, 9.

The state court's denial of these claims is neither contrary to, nor an unreasonable application of, *Brady* or *Strickland*.   The photographs from the crime scene establish that Grant's left front pocket was obscured from view by his wrist and his right front pocket may have been slightly protruding.   *See* App. H-6. Furthermore, Willis' report does not indicate that he or anyone else pulled Grant's pockets out prior to Dr. Irrgang's examination of Grant at the medical examiner's office.

16

*Id.*   Thus, it is questionable that this evidence would have been favorable to the defense as impeachment evidence.

More importantly, as noted *supra*, Petitioner admitted taking Grant's knife and the robbery charge was premised on the taking of the knife.   Moreover, Petitioner confessed that he beat Grant.   Therefore, even if evidence had been presented that Grant's pockets were not turned out in the crime scene photographs, a reasonable probability does not exist that Petitioner would have been acquitted.   Claims seven and thirteen are denied pursuant to section 2254(d).

>    **ii.    *Latent Print Report from Bicycle (Claims Eight, Fourteen, and Seventeen)***

In claim eight, Petitioner asserts that the prosecution failed to disclose a latent fingerprint report.   In support of this claim, Petitioner argues that the report establishes that "[n]one of the latent prints lifted from [the Schwinn bicycle found on the victim] matched Petitioner. . . ."   (Doc. No. 1 at 25.)   Petitioner contends that the bicycle was used to fracture the victim's skull, and the latent print report would have exonerated him.   *Id.*   In claim fourteen, Petitioner asserts that counsel rendered ineffective assistance by failing to object or request a *Richardson* hearing when it became clear that prosecution witnesses were testifying to the undisclosed latent print finding. In claim seventeen, Petitioner alleges that counsel rendered ineffective assistance by failing to investigate and obtain the latent print report from the bicycle.

Petitioner raised these claims in his Rule 3.850 motion.   The state court denied

17

the claims.   (App. L at 5-6, 10, 12.)   The state court reasoned that none of the lab reports maintained by the State identified the location from which the prints were lifted. *Id*.   The state court concluded that there was no evidence that any readable prints were taken from the bicycle, and such an inference was not supported by the testimony at trial.   *Id*. at 6.   The state court further determined that Petitioner failed to establish he was prejudiced by counsel's failure to object or investigate and obtain the report.   *Id*. at 11-12.

At trial, crime scene investigator Ronald Rogers ("Rogers") testified that he processed Grant's room for fingerprints.   (App. A-2 at 85.)   Rogers said he processed the bicycle for prints but could not recall if he was able to lift any prints from the bicycle. *Id*. at 92.   On cross-examination, Detective Emmet Browning testified that they attempted to get fingerprints from the bicycle but there were no fingerprints belonging to Petitioner recovered from the bicycle.   *Id*. at 210.

Defense counsel did not ask Detective Browning if there were any fingerprints recovered from the bicycle, but instead asked if any prints were determined to belong to Petitioner.   Thus, Detective Browning's testimony does not establish that any fingerprints, readable or otherwise, were actually recovered from the bicycle. Furthermore, the latent fingerprint report does not indicate that any fingerprints were recovered from a bicycle or that any prints from a bicycle were of value for comparison. (App. J.)   Petitioner, therefore, has not demonstrated that the State possessed evidence favorable to him in relation to latent print reports.   Nor has he shown that had the

18

latent report been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different, especially given Petitioner's admission to police that he hit the victim multiple times in the face and subsequently tied his hands and feet.   (App. A-2 at 198-99.)    Accordingly, claims eight, fourteen, and seventeen are denied pursuant to section 2254(d).

> ### iii.    *Crime Scene Investigator Suzanne McGuire's Report (Claims Nine and Fifteen)*

In claim nine, Petitioner contends that the prosecution suppressed the report and photographs of crime scene investigator Suzanne McGuire ("McGuire") and failed to list her as a witness.   McGuire was the crime scene investigator involved in the search of Petitioner's home who processed the knife matching the description of the knife taken by Petitioner from the victim.   Petitioner maintains that had McGuire and her report been disclosed, he could have moved to suppress the knife based on contamination. (Doc. No. 1 at 27.)   In claim fifteen, Petitioner asserts that counsel rendered ineffective assistance by failing to object and request a *Richardson* hearing when McGuire testified. Petitioner argues that had counsel done so, he could have moved to suppress the knife. *Id*. at 40-41.

Petitioner raised these claims in his Rule 3.850 motion.   In denying the claims, the state court concluded that this evidence was not material, exculpatory, or impeaching.   (App. L at 6.)   The state court further determined that no prejudice resulted from counsel's failure to object or request a *Richardson* hearing in relation to

McGuire's testimony.   *Id*. at 10.

McGuire was not included on the State's witness list.   At trial, she was called as a witness and testified that she photographed and collected from Petitioner's home a knife with the tip missing.  (App. A-2 at 111.)   Although she was not listed as a witness, Petitioner had an opportunity to cross-examine her.   The photographs taken by McGuire would not have been a basis for suppression simply because the knife was purportedly touched by an officer who was not wearing gloves.   There were no fingerprints or DNA evidence admitted in relation to the knife.   More importantly, Petitioner told police that he had taken a knife from Grant.   (App. A-2 at 184, 195.) Therefore, even if the knife had been suppressed, the jury still would have had sufficient evidence to determine that Petitioner took property from Grant.   In sum, Petitioner has not established that a reasonable probability exists that he would have been acquitted had McGuire's testimony, report, and photographs been suppressed. Accordingly, claims eight and fifteen are denied pursuant to section 2254(d).

### iv.    *Bank of America ATM Surveillance Video (Claim Ten)*

Petitioner maintains that the prosecutor suppressed surveillance video and still photographs from Grant's Bank of America ATM transactions occurring from December 5 through December 9, 2005.   Petitioner argues that the video and photographs would have shown that other individuals were with Grant when he withdrew money from the ATM.

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the

claim, concluding that the State provided the defense with a CD of the surveillance video, and no *Brady* violation occurred even if still photographs were not disclosed. (App. L at 7.)

The record reflects that the State gave a copy of a surveillance video from the Bank of America to the defense.   (App. A-1 at 78.)   Moreover, even if other videos and photographs from the Bank of America existed, such evidence was not exculpatory. Grant was not murdered or robbed at the ATM, but instead in his motel room. Petitioner confessed to beating Grant in his motel room.   Evidence that other individuals went to the ATM with Grant prior to his murder would not have exculpated Petitioner.   Therefore, Petitioner has not demonstrated that the State suppressed favorable evidence or that a reasonable probability exists that he would have been acquitted had such evidence been disclosed.

### v.   *Photographic Line-Up (Claims Eleven and Sixteen)*

In claim eleven, Petitioner asserts that the prosecutor suppressed a photographic line-up shown to Latonya Burgess ("Burgess").   In support of this claim, Petitioner argues that Burgess was shown various photo line-ups and picked two males who were not Petitioner from the line-ups.   In claim sixteen, Petitioner contends that counsel rendered ineffective assistance by failing to investigate and obtain the photo line-ups shown to Burgess.

Petitioner raised these claims in his Rule 3.850 motion.   In denying the claims, the state court noted that it appeared that the photo line-ups were provided to the

defense.   (App. L at 7.)   The state court further determined that Burgess was not an eyewitness to the offenses and was shown the line-ups to allow her to identify an individual, Diaz, she knew and had seen at Grant's motel room on December 10, 2005. *Id*.   The state court concluded that no reasonable probability existed that the outcome of the trial would have been different even if the purportedly suppressed line-ups had been provided to the defense.   *Id*. at 7, 11-12.

Prior to trial, Burgess told police she observed Steve, Diaz, and Dread at Grant's motel room on Saturday.   *See* App. H-6.   Police showed Burgess a line-up to determine if she could identify Diaz.   *Id*.   Burgess identified Diaz and also said another individual in the line-up resembled Lucinda Freeman's boyfriend, who she also saw in Grant's room.   *Id*.   At trial, Burgess testified that she observed Freeman and her boyfriend in Grant's motel room on Friday, December 9, 2005.   (App. A-2 at 53-55.) Burgess could not identify Freeman's boyfriend, who was subsequently identified at trial as Petitioner.   *Id*.   Burgess further testified that she observed Diaz and Dread leave Grant's room on Saturday.   *Id*. at 60-62.

Burgess did not identify Petitioner or anyone else as the perpetrator of the offenses.   In fact, she could not even identify Petitioner as being Freeman's boyfriend. To the extent Burgess identified other individuals in photographic line-ups as people she observed leaving Grant's room, the jury heard Burgess's trial testimony indicating that she saw Diaz and Dread left Grant's room on Saturday evening.   In other words, Burgess' identification of other people she had observed at Grant's motel room was

established at trial.   The fact that Burgess identified other individuals to police in a photo line-up(s) would have been cumulative.   Moreover, the jury heard Petitioner's admission that he beat Grant.   Petitioner, therefore, has not demonstrated that the State suppressed favorable evidence or that a reasonable probability exists that he would have been acquitted had such evidence been disclosed or had counsel investigated and obtained the photo line-ups.   Claims eleven and sixteen are denied pursuant to section 2254(d).

### vi.   Micro-Cassette Tape of Custodial Interrogation (Claim Twelve)

Petitioner asserts that the prosecutor suppressed the original micro-cassette recording of his custodial interrogation.   Petitioner argues that a portion of the redacted CD of the interrogation played at trial was not correct.   Specifically, Petitioner maintains that the portions of the CD "which included the exchange with Detective Schneider regarding asking the victim for his ATM card are erroneous."   (Doc. No. 2 at 37.)

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the claim.   (App. L at 9.)   The state court determined that the CD introduced at trial was a recording of the micro-cassette tape, which was provided to the defense along with a transcript of Petitioner's interrogation.   *Id*.

Petitioner has not demonstrated that the state court's determination was contrary to, or an unreasonable application of, *Brady*.   There is no evidence before this Court that the redacted CD admitted at trial was not a recording of the micro-cassette tape of

Petitioner's confession to police.   Furthermore, assuming that the CD was erroneous in relation to the exchange regarding whether Petitioner asked Grant for his ATM card, there is no reasonable probability that Petitioner would have been acquitted had the micro-cassette been disclosed to the defense.   Petitioner's confession included his admission that he struck Grant multiple times in the face and took his knife, which was the basis for the robbery charge.   Thus, evidence concerning Grant's ATM card was not relevant to Petitioner's guilt concerning the robbery charge.   Accordingly, claim twelve is denied.

### F.   Claim Eighteen

Petitioner asserts that counsel rendered ineffective assistance by failing to object to the prosecution's questions about Burgess's use of crack cocaine and statements in closing argument regarding the impact of the crack on Burgess's credibility.   In support of this claim, Petitioner argues that counsel should have objected because the prosecutor failed to lay the proper predicate for introducing evidence concerning Burgess's prior bad acts.   Petitioner raised this claim in his Rule 3.850 motion.   The state court denied the claim pursuant to *Strickland*.   (App. L at 13-14.)   The state court reasoned that evidence regarding Burgess's drug use was admissible under Florida law "to show that she had been using drugs around the time of the incident and that her drug use affected her ability to observe, remember, and recount the facts."   *Id*. at 14.

The Supreme Court of Florida has held that evidence regarding drug use for impeachment purposes is admissible if:

> (a) it can be shown that the witness had been using drugs at
> or about the time of the incident which is the subject of
> the witness's testimony; (b) it can be shown that the
> witness is using drugs at or about the time of the
> testimony itself; or (c) it is expressly shown by other
> relevant evidence that the prior drug use affects the
> witness's ability to observe, remember, and recount.

*Edwards v. State,*   548 So. 2d 656, 658 (Fla. 1989).

At trial, the prosecutor asked Burgess if she had used narcotics on the dates surrounding Grant's death, and if so, how the drugs affected her.   (App. A-2 at 62-63.) Burgess admitted she used crack cocaine but denied it affected her.   *Id.* at 63.   The prosecutor subsequently asked Dr. Irrgang about the effects of using crack cocaine on the user's perception.   *Id.* at 147-48.   The prosecutor subsequently argued in closing argument that Burgess was using crack cocaine, which impacted her perception of time. *Id.* at 243-44.

This evidence and argument was permissible under Florida law.   Burgess admitted that she was using crack in the days surrounding Grant's murder, and Dr. Irrgang was permitted to testify how crack cocaine affects a user's ability to perceive and remember.   Counsel, therefore, was not deficient for failing to object to this evidence or to the prosecutor's closing argument.   Additionally, Petitioner had not demonstrated prejudice resulted therefrom.   Accordingly, claim eighteen is denied.

### G.    Claim Nineteen

Petitioner asserts that counsel rendered ineffective assistance by failing to object to inadmissible hearsay.   In support of this claim, Petitioner argues that counsel should

have objected to portions of the recording of his custodial interrogation wherein Detective Browning indicated that Freeman said that Petitioner beat Grant. (Doc. No. 1 at 50-51.)

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. L at 14.) The state court noted that the custodial interrogation of Petitioner admitted at trial was redacted to exclude portions of the audiotape that included Freeman's statement to police. *Id*. The state court determined that Detective Browning's statements during the custodial interrogation concerning what Freeman had said were not hearsay because they were not offered for the truth of the matter asserted but instead to show why Petitioner confessed after initially denying any involvement. *Id*. The state court concluded that counsel was not deficient for failing to object to Detective Browning's statements nor was Petitioner prejudiced as a result. *Id*.

Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland*. Detective Browning's statements that Freeman implicated Petitioner in the offenses were not offered to prove that Freeman in fact had done so. The statements, instead, were offered to show Petitioner's reason or motive for confessing to his involvement in the offenses. Therefore, had counsel objected to the statements, the objection would have been overruled. Moreover, even assuming that counsel had objected and the objection had been sustained, the jury still would have heard Petitioner admit to hitting Grant

multiple times in order to help Freeman obtain his ATM card.    Consequently,

Petitioner has not demonstrated that a reasonable probability exists that the outcome of

the trial would have been different had counsel objected to Detective Browning's

statements.    Accordingly, claim nineteen is denied.

### H.    Claim Twenty

Petitioner maintains that counsel rendered ineffective assistance by failing to

request an independent act jury instruction.    Petitioner asserts that this instruction was

appropriate because his theory of defense was that someone caused Grant's death

independent of Petitioner's actions.

Petitioner raised this claim in his Rule 3.850 motion.    The state court denied the

claim, concluding that no basis existed to request the instruction and no reasonable

probability existed that the independent act instruction would have resulted in a

different outcome.    (App. L at 15-16.)

Pursuant to Florida law, the "independent act" instruction applies "when one

cofelon, who previously participated in a common plan, does not participate in acts

committed by his cofelon, 'which fall outside of, and are foreign to, the common design

of the original collaboration.'"    *Ray v. State*, 755 So. 2d 604, 609 (Fla. 2000) (quoting

*Ward v. State*, 568 So. 2d 452, 453 (Fla. 3d DCA 1990)).    In such limited circumstances, "a

defendant whose cofelon exceeds the scope of the original plan is exonerated from any

punishment imposed as a result of the independent act."    *Id*.

The state court's denial of this claim is not contrary to, or an unreasonable

application of, *Strickland*.   Even assuming that someone other than Petitioner subsequently entered Grant's motel room, further beat him, and robbed him, those subsequent acts did not fall outside of, and were not foreign to, the common design of the original collaboration between Petitioner and Freeman to rob Grant.   Thus, the independent act instruction was not applicable.   Moreover, a reasonable probability does not exist that the jury would have acquitted Petitioner had such an instruction been given in light of Petitioner's admission that he struck Grant multiple times in the face and bound his hands and feet.   Accordingly, claim twenty is denied pursuant to section 2254(d).

### I.      *Claim Twenty One*

Petitioner asserts that he was deprived of a fair trial based on cumulative errors.   Petitioner raised this claim in his Rule 3.850 motion.   The state court denied relief, reasoning that no errors occurred.   (App. L at 16.)

The Eleventh Circuit Court of Appeals has recognized that in reviewing a habeas petition, "[a] piecemeal review of each incident does not end our inquiry.   We must consider the cumulative effect of these incidents and determine whether, viewing the trial as a whole, appellants received a fair trial as is their due under our Constitution." *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983).   After reviewing the record and considering the claims individually, the Court concludes that none of Petitioner's claims are meritorious.   Likewise, this Court cannot say that viewed collectively these claims rendered Petitioner's "trial, as a whole, . . . fundamentally unfair and outside the

bounds of the Constitution." *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004). Accordingly, claim twenty one is denied pursuant to section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings

debatable.   Petitioner has failed to make a substantial showing of the denial of a

constitutional right.      Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Ira La'Ray

Lane is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close

this case.

**DONE AND ORDERED** in Orlando, Florida, this 26th day of August, 2013.

                                                ROY B. DALTON JR.
                                          United States District Judge

Copies to:
OrlP-1 8/26
Counsel of Record
Ira La'Ray Lane